IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| HOMECOMING FINANCIAL NETWORK, | ) | 03 C 3115 |
| LITTON LOAN SERVICING L.P., | ) | |
| SAFEGUARD PROPERTIES INC., | ) | |
| APPLEBROOK REALTOR, | ) | |
| KROPIK, PAPUGA & SHAW and | ) | |
| PIERCE & ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenneth Matthews has sued defendants Homecoming Financial Network, Litton Loan Servicing, Safeguard Properties Inc., Applebrook Realtor, Kropik, Papuga & Shaw, and Pierce & Associates pursuant to 42 U.S.C. §§ 1983, 1985, U.S.C. § 241, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1639, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, as well as state law. Before the Court is defendants' joint motion to dismiss the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons provided below, the Court grants in part and denies in part the motion.

## FACTS

On October 24, 1997, Matthews signed a home purchase mortgage and note for a single family home located at 1458 West 74th Street, Chicago, Illinois, 60636. (Third Am. Compl. ¶ 13.) The mortgage required Matthews to make monthly payments for thirty years, beginning on December 1, 1997. (*Id.* ¶ 15.) On March 20, 2002, a Notice of Sale was filed in the Chancery Division of the Illinois Circuit Court. (*Id.* ¶ 18.) On August 5, 2002, a Report of Sale and Distribution and Receipt of Sale was filed in the Chancery Court. (*Id.* ¶ 19.) The August 5, 2002 order granted possession to Defendant Homecoming effective thirty days after. (*Id.* ¶ 20.)

According to Matthews, on or about March 13, 2002, Defendant Homecoming or its agent forcibly entered his home, removed personal property and changed the locks (*Id.* ¶¶ 21, 23, 34.) Defendant Homecoming communicated with one or more of the co-defendants to accomplish these actions. (*Id.* ¶¶ 24, 25.) Matthews came home on March 13, 2002 to discover that the locks on his home had been changed and his personal property had been stolen. (*Id.* ¶ 28.) He filed a police report and was informed by a police officer that one or more of the defendants had entered his home and locked him out. (*Id.* ¶ 29.) Matthews attempted to contact Defendant Safeguard and Defendant KPS, but he was treated rudely and hung up on. (*Id.* ¶¶ 30, 31.) On April 7, 2002, Matthews witnessed approximately seven representatives of defendant Applebrook enter his home to board up the property. (*Id.* ¶ 36.) He filed another police report regarding this incident. (*Id.*) He states that his neighbors are aware of at least five incidents when defendants entered the property and removed personal property prior to September 4, 2002, *i.e.*, the date on which defendant Homecoming had a right to possession. (*Id.* ¶ 37.)

## DISCUSSION

A motion to dismiss does not address the merits of the plaintiff's case; instead, it challenges the sufficiency of the complaint. *Autry v. N.W. Premium Servs.*, 144 F.3d 1037, 1039 (7th Cir. 1998). This liberal notice pleading standard is satisfied where the plaintiff's complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A complaint should only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. In ruling on a motion to dismiss, the court assumes all well-pleaded facts in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Ogden Martin Sys., Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999). However, merely stating vague and conclusory legal allegations and reciting the applicable statute is insufficient to satisfy the notice pleading standard. *Perkins v. Silverstein*, 939 F.2d 463, 467-68 (7th Cir. 1991); *see McLeod v. Arrow Marine Transp., Inc.* 258 F.3d 608, 614 (7th Cir. 2001).

Although the third amended complaint does not specifically request that this Court review the state court proceedings relating to the foreclosure and judicial sale, Matthews repeatedly refers to those proceedings. To be clear, this Court will not review the state court's rulings. Under the *Rooker-Feldman* doctrine, lower federal courts may not serve as courts of appeal for state courts. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483-84 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923). In addition, the doctrine "precludes federal jurisdiction over claims inextricably intertwined with a state court determination." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (quotations omitted). This Court abstains from reviewing Matthews' claims to

3

the extent that he seeks review of the Cook County Circuit Court's judgment of foreclosure and sale and award of possession, or the Illinois Appellate Court's affirmance of those orders.

## I. Alleged Civil Rights Violations (Count I)

In Count I, Matthews alleges violations of his civil rights pursuant to 42 U.S.C. §§ 1983, 1985, and 18 U.S.C. § 241. Matthews states that defendants conspired together to "oppress, threaten, intimidate or deprive the Plaintiff of property without due process . . . for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws, or of the equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of the state of Illinois from giving or securing Plaintiff the equal protection of the laws." (Third Am. Compl. ¶¶ 39-49.)

### A. 42 U.S.C. § 1983

A claim under 42 U.S.C. § ("Section") 1983 requires an allegation of a violation of a constitutional right by any person acting under the color of state law. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). For Section 1983 purposes, "[a] private individual will be considered a state actor if he is jointly acting with the government, performing a public function, or is entwined with the government or subject to government coercion or encouragement." *Watson v. St. Luke Acad.*, No. 04 C 2472, 2005 WL 281227, at *4 (N.D. Ill. Feb. 2, 2005) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001)).

Matthews has not alleged that defendants: (1) acted jointly with the government; (2) performed a function traditionally relegated to the government; (3) are entwined with the

4

government; or (4) were coerced or encouraged by the government. In fact, Matthews alleges that defendants violated state law by forcibly entering the home, taking personal property and changing the locks prior to the date on which Homecoming was permitted to take possession of the property. (Third Am. Compl. ¶¶ 21-37.) Because Matthews has failed to allege that defendants could be considered state actors and because he specifically states that defendants' actions violated a court order that stated possession was not to take place until a later date, Matthews has failed to state a claim under Section 1983.

### B. 42 U.S.C. § 1985

Unlike Section 1983, Section 1985(3) was meant to address deprivations caused by private actors. *See Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971). Section 1985(3) liability will lie if "two or more persons . . . go . . . on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The statute's language "requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin,* 403 U.S. at 102. However, the class-based animus prohibited by section 1985(3) is "an animus Congress intended to link closely to racial bias and violations of the Thirteenth, Fourteenth, and Fifteenth Amendments." *D'Amato v. Wisc. Gas Co.,* 760 F.2d 1474, 1486 (7th Cir. 1985) (stating that "classes based on race, ethnic origin, sex, religion and political loyalty . . . have previously been recognized as possibly supporting a Section 1985(3) claim").

5

Although Matthews alleges that defendants entered his property and caused him harm, and that he is an African-American man, it would be unreasonable to infer from these facts alone that defendants acted with racially discriminatory animus. Because Matthews has failed to allege that defendants' actions were motivated by racial or other class-based animus recognized under Section 1985(3), he fails to state a claim under Section 1985(3).

### C.  18 U.S.C. § 241

As a private citizen, Matthews cannot maintain an action under 18 U.S.C. § 241. This section of the criminal code clearly gives a right of action to the government prosecutor in a criminal case. *Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983). Therefore, this cause of action is dismissed with prejudice.

## II. Alleged Violations of FDCPA, TILA and ECOA

Defendants argue that Matthews' FDCPA, TILA and ECOA claims are time-barred and even if they were not time-barred, his allegations as to these counts fail to state a claim. The Court addresses each argument in turn.

### A.  Statute of Limitations

Defendants argue that Counts II, III, and IV are time barred. The expiration of the statute of limitations is an affirmative defense. *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004). Generally, it is not proper for a court to grant a motion to dismiss on an affirmative defense. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). A plaintiff is not

required to anticipate all affirmative defenses when drafting a complaint. *Id.* Whether a plaintiff will be able to respond to the statute of limitations defense with equitable estoppel or tolling will require evidence that is not required at the motion to dismiss stage. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (stating that tolling or estoppel should not be decided on a motion to dismiss because generally more evidence is required).

The Third Amended Complaint clearly states that a mortgage and note was signed by Matthews on October 24, 1997.[1] (Third Am. Compl. ¶ 13.) Although that date appears at this point to be a logical start of the running of the statute of limitations, there may come to light a valid reason to support equitable tolling or estoppel. Accordingly, the Court denies the motion to dismiss based on any statute of limitations and will address these issues at some other point in the litigation, if necessary.

### B. Count II: Fair Debt Collection Practices Act

One of the purposes of the FDCPA is to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1962(e). The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The FDCPA further provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f It is a violation of the FDCPA for "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

---

[1]Matthews also alleges that Homecoming extended credit to him via a home equity loan, but he does not state when that loan occurred. (*See* Third Am. Compl. ¶¶ 57-59.)

7

which is the enforcement of security interests," *id.* § 1692a(6), to "[t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession . . . of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest," *id.* § 1692f(6)(A). *See Purkett v. Key Bank USA, Inc.*, No. 01 C 162, 2001 WL 503050, at *2 (N.D. Ill. Jan. 9, 2001).

Matthews alleges that defendants are debt collectors and that he is a consumer. (Third Am. Compl. ¶¶ 52-53.) He states, "Defendants' [sic] engaged in actions prohibited by the Act, *i.e.*, made false and misleading representations, harassed, oppressed, abused, and engaged in unfair practices," (*id.* ¶ 55), and that defendants sent deceptive correspondence to him via U.S. mail, (*id.* ¶ 107). He alleges that on March 13, 2002, defendants forcibly entered his house, removed his personal property, and changed the locks. (*Id.* ¶¶ 21, 23, 24.) He further alleges they did not have a right to possess the house until September 4, 2002. (*Id.* ¶ 20.) The Court finds that these allegations state a claim under the FDCPA because they adequately provide notice of the abusive practices of which Matthews complains. The Court denies the motion to dismiss Count IV.

### C. Count III: Truth in Lending Act

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. "It does not substantively regulate consumer credit but rather requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001) (quotations omitted). "The disclosures vary depending on the type of loan transaction." *Id.*

8

Matthews alleges that he "signed a mortgage and note with Homecoming for the purpose of securing a home equity loan for his primary residence." (Third Am. Compl. ¶ 57.) He alleges that the "extension of credit involved a written agreement between Homecoming (or assignee) and Plaintiff to pay an agreed amount in more than four installments, including an agreement to pay finance charges." (*Id.* ¶ 59.) He alleges that Homecoming or its assignee "violated at least one of the disclosure provisions of the Act." (*Id.* ¶ 60.)

The Court finds that these allegations are insufficient to put Homecoming on notice as to which disclosure(s) it purportedly failed to make. Matthews' mere conclusory legal allegation that Homecoming violated at least one provision of TILA does nothing to apprise defendant of the claim against it. Accordingly, the Court dismisses Count III without prejudice to give Matthews one last chance to replead his TILA claim.

### D. Count IV: Equal Credit Opportunity Act

The ECOA provides that it is unlawful for a creditor to discriminate against any applicant "(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ; (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a).

The entirety of Matthews' allegations with regard to his ECOA claim is as follows: (1) Homecoming is a creditor and Matthews applied for and was extended credit by Homecoming, (Third Am. Compl. ¶¶ 64-65); and (2) "Homecoming has engaged in prohibited discrimination in the extending of credit to Plaintiff," (*id.* ¶ 66).

9

Similar to the TILA claim discussed above, Matthews' allegations fail to provide Homecoming notice as to his ECOA claim. Merely alleging that he was extended credit by Homecoming is insufficient. While the Court acknowledges that the purpose of the ECOA is to prevent prohibited discrimination, the recitation of the statute, in and of itself, does not inform defendant as to the gravamen of his ECOA cause of action. As discussed above in relation to plaintiff's Section 1985(3) claim, plaintiff states that he is an African-American male, (*id.* ¶ 6), but he does not allege that Homecoming's extension of credit to him amounted to discrimination based on race. Homecoming, as well as the Court, is left to guess whether Matthews claims he was discriminated against based on race, color, religion, national origin, sex, marital status or age, or any other prohibited animus outlined in 42 U.S.C. § 1691(a). The Court dismisses the ECOA claim without prejudice so that Matthews may have one last chance to attempt to state a cause of action under the ECOA.

## III.     State Law Claims

Matthews also sues defendants for violations of state law: conspiracy, negligence, intentional infliction of emotional distress, trespass, trespass to chattels, conversion, fraud and unfair and deceptive business practices. Matthews asks for punitive damages. Defendants have moved to dismiss all state law claims.

### A.     Count V:  Conspiracy

"Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful

means." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Id.* "A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself tort." *Id.*

Matthews alleges that each defendant conspired with one another in a concerted effort to violate state laws, for example, laws prohibiting trespass, trespass to chattels, conversion. He alleges they are liable for conspiracy regarding all of his state law claims. Because, as discussed below, the Court holds that Matthews states a claim for some of his state law causes of action, his claim for civil conspiracy cannot be dismissed.

**B.    Count VI: Negligence**

Only defendants Kropik, Papuga & Shaw and Pierce & Associates move to dismiss Count VI, and they argue that Matthews' negligence claim fails to state a claim as to them because they are law firms and owe no duty to Matthews, a nonclient. Matthews alleges that these defendants owed him a duty to obey the law. (Third Am. Compl. ¶ 74.)

"Whether a duty exists is a question of law which depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Woodard v. Am. Family Mut. Ins. Co.*, 950 F. Supp. 1382, 1389 (N.D. Ill. 1997) (citing *Gouge v. Cent. Ill. Pub. Serv.*, 582 N.E.2d 108, 112 (Ill. 1991)). "[T]he mere fact that the complaint alleges that defendants owed plaintiff[] a legal duty, a legal conclusion, need not be accepted by the court and is subject to th[e] court's own determination." *Id.*

11

Thus, this Court determines for itself whether and in which situations attorneys owe a duty to nonclients for purposes of a negligence claim. "[T]o establish a duty owed by an attorney to a nonclient[,] the nonclient . . . must allege and prove 'that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Riordan v. Smith Barney*, No. 84 C 3216, 1987 WL 12179, at *4 (N.D. Ill. June 9, 1987) (quoting *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982)). "In cases of an adversarial nature, in order to create a duty on the part of the attorney to one other than a client, there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party." *Id.* at 100.

It is clear from the facts pleaded in the complaint that the representation by Kropik, Papuga and Shaw and Pierce and Associates in relation to the mortgage foreclosure litigation was not intended to directly confer a benefit upon Matthews. In fact, these defendants and their clients stood in an adversarial relationship with Matthews such that these law firms did not owe a duty to him as a matter of law. This holding recognizes the Supreme Court of Illinois' concern that "negligence not extend to an unlimited and unknown number of potential plaintiffs." *Id.* at 99. Accordingly, the Court grants Kropik, Papuga & Shaw and Pierce & Associates' motion to dismiss Count VI as to them.

### C. Count VII: Intentional Infliction of Emotional Distress

Matthews pleads in the alternative that defendants are liable for intentional infliction of emotional distress ("IIED"). To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous;

12

(2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *See, e.g., McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000).

In deciding whether a defendant's conduct is extreme and outrageous, the Illinois Supreme Court has set out several factors for consideration: (1) the power and control the defendant has over the plaintiff; (2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *McGrath*, 533 N.E.2d at 809-11. The Illinois Supreme Court has also held that liability for IIED is triggered only when the defendant's conduct is so outrageous and extreme as to "go beyond all possible bounds of decency," and that "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" do not establish liability. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Further, the distress inflicted must be severe that no reasonable person could be expected to endure it. *McGrath*, 533 N.E.2d at 809.

Matthews has alleged that on March 13, 2002, despite the fact that he owned and had a right to possess his property, defendants forcibly entered his home, changed the locks, and removed his personal property. (Third Am. Compl. ¶ 20.) When Matthews, his wife and two children, ages seven and twelve, returned home that day, they were locked out of their home and denied entry by the defendants. (*Id.* ¶¶ 33-34.) He alleges that defendants knew they had no legal right to evict him and that defendants intended to cause, and succeeded in causing, him severe emotional distress. (*Id.* ¶¶ 81-82.) Matthews alleges that defendants' actions forced him out onto the streets and that he was homeless for several months. (*Id.*) Despite his pleas and his insisting that defendants had no right to

13

evict him from his home, defendants refused to grant him access to either his home or the property removed from his home. (*Id.* ¶¶ 30-31.)

Evicting someone from his home without legal justification is extreme and outrageous conduct. Plaintiff alleges that defendants intended to cause him severe emotional distress, and even if they did not intend to do so, they knew that wrongfully evicting him from his home was likely to cause him severe emotional distress. It is clear that in this situation, defendants exerted power and control over Matthews and that Matthews had little or no power to change the course of defendants' actions. Matthews suffered severe emotional distress from his being homeless for several months and his being forced to later live apart from his wife and children. The Court holds that these allegations state a claim for intentional infliction of emotional distress and denies defendants' motion to dismiss Count VII.

### D.     Counts VIII, IX, and X : Trespass, Trespass to Chattels and Conversion

Plaintiff has sued defendants for trespass, trespass to chattels and conversion. Because the three torts are based on similar facts, the Court addresses them together.

As to Count VIII, under Illinois law, "trespass is an intentional invasion of the exclusive possession and physical condition of land." *Freese v. Buoy*, 576 N.E.2d 1176, 1182 (Ill. App. Ct. 1991). Further, a "person who aids, abets, assists, or directs the commission of a trespass by another is liable for trespass." *Dietz v. Ill. Bell Tel. Co.*, 507 N.E.2d 24, 26 (Ill. App. Ct. 1987).

With regard to Count IX, "[a]n injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." *See Sotelo v. DirectRevenue, LLC*, No. 05 C 2562, 2005 WL 2095107, at *8 (N.D. Ill. Aug. 29, 2005) (quotation omitted). "[T]here are two

14

ways to commit this tort: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS, § 217). "[The claim of trespass to personal property's] chief importance . . . is that there may be recovery . . . for interference with the possession of chattels which are not sufficiently important to be classified as conversion . . . ." *Id.* (quotation omitted).

In relation to Count X, "[c]onversion is the unauthorized deprivation of property from a person entitled to its possession." *See IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 610 (Ill. App. Ct. 2004). To prove conversion, a plaintiff must establish the following elements: "(1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) the plaintiff's demand for possession of the property." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004).

Matthews has alleged that on March 13, 2002, all defendants forcibly entered his home without his consent and changed the locks. (Third Am. Compl. ¶¶ 21, 23, 24.) Matthews also alleges that Litton and Homecoming requested one or more of the other defendants to remove his property. (*Id.* ¶¶ 24-25.) When he and his family returned home that day, they discovered that their door locks had been changed and their personal property had been taken. (*Id.* ¶ 28.) Matthew alleges that as of that date, defendants did not have a right of possession regarding the property, and did not obtain a right of possession until September 4, 2002 per a court order entered on August 5, 2002. (*Id.* ¶ 20.) Matthew alleges that he made numerous inquiries as to the return of his personal

property and numerous attempts to regain possession of his home by calling defendants and their

agents. (*Id.* ¶¶ 29, 30, 35.) Matthews states that at no time had his property been deemed abandoned

by any court. (*Id.* ¶ 22.)

These facts are sufficient to put defendants on notice as to the trespass, trespass to chattels,

and conversion claims against them. Given the liberal notice pleading standard, the Court cannot

hold, given the facts alleged, that Matthews can prove no set of facts in support of his claims which

would entitle him to relief. The Court denies defendants' motion to dismiss Counts VIII, IX, and X.

### E.     Count XI:  Fraud

Next, the Court addresses Matthews' fraud claim.  To prove common law fraud under Illinois

law, a plaintiff must establish that:

> (1) the defendant made . . . false statement[s] of material fact; (2) the defendant knew
> or believed that the statements were false, or the statements were made with a
> reckless disregard of whether they were true or false; (3) the statements were made
> with the intent to induce action; (4) the plaintiff reasonably believed the statements
> and justifiably acted in reliance on those statements; and (5) the plaintiff suffered
> damages as a result.

*Kapelanski v. Johnson*, 390 F.3d 525, 530-31 (7th Cir. 2004); *see Davis v. G.N. Mortgage Corp.*, 396

F.3d 869, 881-82 (7th Cir. 2005).

Normally any allegation of fraud is subject to the heightened pleading standards of Rule 9(b).

FED. R. CIV. P. 9(b).  Plaintiffs must state the circumstances constituting fraud with particularity.  *Id.*

In this circuit, this has been interpreted as requiring the "who, what, when, where, and how:  the first

paragraph of any newspaper story."  *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990); *see*

*also Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir. 1991)

("[P]arties pleading fraud in federal court . . . must state the time, place and content of the alleged

communications perpetrating the fraud.") (internal quotations omitted). "The purpose . . . of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

First, the Court holds that Matthews' general allegation that defendants "engaged in deceitful conduct and communications with Plaintiff to defraud Plaintiff and take possession of his home," (Third Am. Compl. ¶ 100), does not satisfy the heightened pleading standard of Rule 9(b). Matthews must state the particularities of each instance of the alleged fraud, *e.g.*, who made each misrepresentation, when and where the party said it, and how the fraud took place.

Matthews argues that the Court should not dismiss his fraud claim because he specifically alleged that on March 14, 2002, an agent of Safeguard falsely told him, "we've got a work order" regarding the eviction. (*Id.* ¶ 30.) First, he does not allege that the Safeguard agent knew that he was making a false statement. Second, he does not allege how he acted in reliance on the statement. Third, and most fatal, is that he has pleaded himself out of court regarding the issue whether his reliance was justified or reasonable. Matthews alleges that he knew that the eviction was illegal prior to Safeguard's agent's purported misrepresentation because he filed a police report for forcible entry and burglary on March 13, 2002 and was told by the police officer that defendants' actions were both wrong and illegal. (Third Am. Compl. ¶ 29.) Accordingly, he could not have reasonably relied on the Safeguard agent's statement the next day that the eviction was proper because it had a work order authorizing it. Accordingly, the Court dismisses that particular fraud claim with prejudice and any other fraud claim without prejudice. The Court grants plaintiff one final opportunity to amend his complaint to state a fraud claim.

17

## F.     Count XII:  Illinois Consumer Fraud and Deceptive Business Practices Act

Next, Matthews sues defendants for violating the Illinois Consumer Fraud and Deceptive

Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/1 *et. seq.*[2]  ICFA was enacted to "protect

consumers and borrowers and businessmen against fraud, unfair methods of competition, and unfair

or deceptive acts or practices in the conduct of any trade or commerce." 815 ILL. COMP. STAT.

505/1. To prove a violation of ICFA, a plaintiff must establish: "(1) a deceptive act or practice by

the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of

the deception in the course of conduct involving trade and commerce, and (4) actual damage to the

plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160

(Ill. 2002). Where a plaintiff's ICFA claim sounds in fraud, it must be pleaded with particularity

pursuant to Rule 9(b). *See, e.g., Gallagher Corp. v. Mass. Mut. Life Ins.*, 940 F. Supp. 176, 180

(N.D. Ill. 1996) (requiring allegation that defendant misrepresented material facts with regard to

insurance policies to comply with Rule 9(b)).

Because Matthews alleges as part of his ICFA claim that defendants knowingly send

deceptive correspondence to borrowers with the aim of illegally dispossessing borrowers from their

homes, stealing their personal property and using the proceeds to further fund the scheme, the Court

holds that Rule 9(b) applies. Matthews has failed to allege the who, what, when, where, and how of

the fraudulent misrepresentations that support his ICFA claim. (*See* Third Am. Compl. ¶¶ 103-08.)

He states that the defendants repeatedly engage in sending deceptive correspondence to borrowers

without providing any particulars as to any of the incidents of which he complains. Accordingly, the

---

[2]The Court notes that "violations of the FDCPA are not *per se* violations of the Illinois Act, and thus [a plaintiff] must independently state a claim under the Act." *Chapman v. Ontra, Inc.*, No. 96 C 19, 1997 WL 321681, at *5 (N.D. Ill. June 6, 1997).

18

Court dismisses Count XII without prejudice to afford Matthews one last chance to replead his ICFA claim.

### G.    Count XIII: Punitive Damages

Defendants argue that Matthews' request for punitive damages must be stricken because:  (1) as a matter of law punitive damages are unavailable as to the law firms of Kropik, Papuga and Shaw and Pierce and Associates; and (2) he has failed to state a claim from punitive damages as to all defendants.  Under Illinois law, "punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978).

Kropik, Papuga and Shaw and Pierce and Associates argue that Matthews' request for punitive damages is barred by 735 ILL. COMP. STAT. 5/2-1115.  That statute provides: "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed."  735 ILL. COMP. STAT. 5/2-1115.  However, where "no attorney-client relationship exist[s] between plaintiff and defendants, . . . the behavior alleged in plaintiff's complaint d[oes] not amount to legal malpractice."  *Chi. Dist. Council of Carpenters Welfare Fund v. Gleason & Fritzshall*, 693 N.E.2d 412, 417 (Ill. App. Ct. 1998).  Because Matthews and the law firms did not have an attorney-client relationship, he obviously is not suing the law firms for legal malpractice.  Thus, the law firms' motion to strike Matthews' request for punitive damages on this ground is denied.

19

Further, as to all defendants, the Court finds that the motion to strike punitive damages is premature and inappropriate at this stage of the litigation given that Matthews may be able to prove gross negligence in support of Count VI as to Homecoming, Litton, Safeguard, and Applebrook. "If the evidence adduced warrants punitive damages, they may be awarded; if not, none will be made." *Thome v. Oliver*, No. 92 C 4603, 1993 WL 257243, at *2 (N.D. Ill. July 6, 1993) (denying motion to dismiss punitive damages as improper). The Court denies the motion to strike the request for punitive damages.

## H.    Defendants' Request for Rule 11 Sanctions

Defendants have requested that this Court impose Rule 11 sanctions for Matthews' filing a Third Amended Complaint because, in their view, all of the causes of action alleged are frivolous. The Court denies the request for failure to comply with Rule 11(c)(1)(A), which requires that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." FED. R. CIV. P. 11(c)(1)(A). If after reviewing this Memorandum Opinion and Order, which grants in part and denies in part defendants' motion to dismiss, defendants still believe that Matthews' filing the Third Amended Complaint is grounds for Rule 11 sanctions, they may move in compliance with that rule.

## CONCLUSION

For the forgoing reasons, the Court grants in part and denies in part the defendants' joint motion to dismiss [doc. no. 75-1]. The Court: (1) dismisses with prejudice part of Count I (based on 18 U.S.C. § 241) as to all defendants and Count VI (Negligence) as to defendants Kropik, Papuga and Shaw and Pierce and Associates; (2) dismisses without prejudice the other claims in Count I (based on 42 U.S.C. § 1983, 42 U.S.C. § 1985(3)), as well as Count III (TILA), Count IV (ECOA), Count XI (Fraud) (except the fraud claim based on the Safeguard agent's "work order" statement, which is dismissed with prejudice), and Count XII (Unfair and Deceptive Business Practices); and (3) in all other respects, denies the motion to dismiss. Only Count II (FDCPA), Count V (Conspiracy), Count VI (Negligence as to Homecoming, Litton, Safeguard, and Applebrook), Count VII (IIED), Count VIII (Trespass), Count IX (Trespass to Chattels), and Count X (Conversion) remain. The Court grants plaintiff one final opportunity to amend his complaint within ten days of the date of this Memorandum Opinion and Order. Failure to amend the complaint within ten days shall signify that Matthews no longer wishes to pursue those claims that have been dismissed without prejudice and shall result in the dismissal of those claims with prejudice.

**SO ORDERED**                    **ENTERED:**  9/26/05

**HON. RONALD A. GUZMAN**
**United States Judge**